Joseph A. Brophy (No. 026662)
E-mail:  jab@jkwlawyers.com
**JENNINGS HAUG KELEHER MCLEOD WATERFALL LLP**
2800 N. Central Avenue, Suite 1800
Phoenix, AZ  85004-1049
Telephone:    602-234-7800
Facsimile:    602-277-5595

Court Documents: docket@jkwlawyers.com

Jarrod J. Malone (*Pro Hac Vice admission pending*)
E-mail:  jmalone@shumaker.com
Charles A. Wood, Jr.
E-mail:  cwood@shumaker.com
Michael S. Taaffe
E-mail:  mtaaffe@shumaker.com
Brandon M. Taaffe
E-mail:  btaaffe@shumaker.com
**SHUMAKER LOOP & KENDRICK, LLP**
240 S. Pineapple Avenue, 9th Floor
Sarasota, FL  34246
Telephone:    941-366-6660
Facsimile:    941-366-3999

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ameriprise Financial Services, LLC | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | (Injunctive Relief) |
| Jared Bryce Roskelley, Matthew Joseph Tinyo, Kyle Lee Robertson, and LPL Financial, LLC, | |
| Defendants. | |

Plaintiff, Ameriprise Financial Services, LLC ("Ameriprise" or "Plaintiff"), files this Complaint and Application for Temporary Restraining Order and Injunctive Relief against defendants Jared B. Roskelley, Kyle L. Robertson, Matthew J. Tinyo and LPL Financial, LLC ("Defendants").

**PRELIMINARY STATEMENT**

1.      This action is for a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of an arbitration proceeding between Ameriprise and Defendants that concurrently is being filed with FINRA Dispute Resolution.[i]

2.      This action arises from Defendants, Roskelley, Tinyo, Robertson's resignation from Ameriprise on January 27, 2025, and the immediate commencement of their employment with LPL Financial Services, LLC ("LPL"), a direct competitor of Ameriprise. At the time of their resignations, Roskelley, Tinyo, and Robertson worked as part of a team of financial advisors located in Scottsdale, Arizona.

3.      Roskelley, Tinyo, and Robertson's pre-termination and post-termination conduct includes serious misconduct and violations of various contracts and regulations, much of which was supported and encouraged by LPL. Specifically, Roskelley, Tinyo, and Robertson violated—and continue to violate—the Protocol for Broker Recruiting, their contractual agreements with Ameriprise, and common and statutory law through their impermissible taking of confidential information related to clients, pre-solicitation, and solicitation of, the clients they previously serviced at Ameriprise.

4.      The Protocol for Broker Recruiting ("Protocol") governs the use of client information when registered representatives move between firms that are signatories to the Protocol.

5.      "The principal goal of the [Protocol] is to further clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ("RRs") between firms. If departing RRs and their new firm follow this protocol, neither the departing RR nor the firm that he or she joins would have any monetary or other liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm . . ." Exhibit A, The Protocol for Broker Recruiting.

6.      As a signatory to the Protocol, LPL is responsible to ensure that the actions of registered representatives that they hire from another signatory firm comport with the requirements of the Protocol, otherwise, LPL loses the protections provided by the Protocol.

7.      Ameriprise recently discovered that prior to resigning from Ameriprise, Roskelley, Tinyo, and Robertson preemptively violated the Protocol, their duties of loyalty to Ameriprise and their agreements, by taking confidential documents and information, sending unapproved packages of documents to clients via USPS, UPS, and electronic upload, and pre-solicited clients ahead of their resignation.

8.      Leading up to their resignation on January 27, 2025, Roskelley and Robertson, along with their Registered Practice Associate Matthew J. Tinyo, conducted an irregular number of print jobs and printed a total of 8,887 pages of documents containing confidential information such as client names, account numbers, excel spreadsheets created by Defendants (not Ameriprise approved reports) that contain overview summaries of their high net worth clients, containing all of the information relating to the clients' accounts including account numbers, holdings, required minimum distributions, beneficiary information, and owners of 529 plans with included children's social security numbers and dates of birth.

9.      Several weeks before leaving to the competition, Advisor Respondents began their misconduct by pre-soliciting Ameriprise customers.  In late 2024, an Ameriprise client serviced by Advisor Respondents asked to open approximately 25-30 new 529 accounts for their grandchildren.  This client was Advisor Respondents' largest client.  Advisor Respondents told the client that Advisor Respondents were going to be leaving Ameriprise after the start of 2025 and instructed the client to wait until after Advisor Respondents had started at their new broker-dealer.

10.     In the week before their resignations, Defendants asked office staff, without informing management, to work overtime on the weekend to create off-cycle client account reports that were saved into print folders that Defendants then printed and mailed

to their clients without Ameriprise approval. The employee spent 4 hours on January 19, 2025, and another 4 hours on January 20, 2025 (a Federal Martin Luther King holiday), to perform this work.

11.    Individual Defendants also misappropriated Ameriprise proprietary Powerpoint presentations called E-Meeting Reports made for high net worth clients that contain all of the clients' financial detail and returns which appear to be made for upcoming meetings with clients after Defendants join LPL.

12.    Ameriprise's printing reports show that in the last six months of their employment Roskelley, Robertson, and Tinyo never printed documents of this type in this manner, except for the 8,887 pages of documents printed between January 22, 2025 and January 24, 2025.

13.    In addition to the large number of print jobs of confidential information and documents, Roskelley, Tinyo, and Robertson also uploaded hundreds, if not thousands, of pages of unapproved customer statements to clients containing confidential information and client information.

14.    Ameriprise has also acquired photographic and video evidence showing Robertson exiting Ameriprise offices carrying a banker's box filled with unknown documents, Roskelley exiting the Ameriprise office with several client packages filled with unknown documents, and both Tinyo and Robertson leaving the office with heavy backpacks.

15.    Ameriprise did not become aware of these violations until after Roskelley, Tinyo, and Robertson's resignations.

16.    Advisors are prohibited from sending documents to clients just before transitioning to a competitor as an "end-around" to the restrictions under the Protocol and their restrictive covenants.

17.    While Roskelley and Robertson claimed the protections of the Protocol, they had already violated the Protocol by mailing out documents to clients with their confidential information prior to their departure, taking confidential documents and

information, and pre-soliciting clients, thereby rendering the protections of the Protocol moot.

18.     In addition to their initial violations and despite Roskelley, Tinyo, and Robertson's contractual obligations to Ameriprise, upon their transition to LPL, Roskelley, Tinyo, and Robertson failed to return and improperly retained confidential documents and information belonging to Ameriprise which they printed, sent outside of the firm, and misappropriated same to solicit their former clients.

19.     A registered representative that was properly counseled by LPL regarding the Protocol would have been aware that its terms, while simple, must be strictly followed in order to benefit from the protections of the Protocol.

20.     Roskelley, Tinyo, and Robertson's willful failure to return and retention of documents containing information outside what is allowed by the Protocol—even without use of same—is a violation of the Protocol. Because Roskelley and Robertson violated the Protocol, their transition are not eligible to receive the protections of the Protocol, and Roskelley and Robertson are not entitled to keep and use their Protocol Lists and are not permitted to solicit clients that they serviced while employed at Ameriprise, which they have done.

21.     An advisor's violation of the Protocol forfeits the protections of the Protocol entirely. Therefore, Roskelley and Robertson are not able to claim that the Protocol protects them in any respect. Accordingly, the terms of Roskelley, Tinyo, and Robertson's agreements with Ameriprise, which prohibit the taking of any confidential information and prohibit the solicitation of any client, apply to Roskelley, Tinyo, and Robertson's transitions to LPL.

22.     Roskelley, Tinyo, and Robertson have openly acted in plain violation of these contractual agreements. Moreover, Roskelley, Tinyo, and Robertson are engaging in such misconduct with the knowledge and support of LPL, whose regular pattern and practice is to encourage recruits to violate their contractual agreements.

23.    Roskelley, Tinyo, and Robertson's conduct constitutes multiple and separate violations of the Protocol, their contractual obligations with Ameriprise, FINRA's requirement for integrity and truthfulness, and both common and statutory law.

24.    To prevent continued irreparable harm arising from Defendants' course of misconduct, Ameriprise seeks immediate injunctive relief (in the form of a temporary restraining order, preliminary injunction, and expedited discovery) barring Defendants from soliciting Ameriprise clients, and barring Defendants from further using and compelling the return of Ameriprise's confidential and proprietary business and client information they improperly took, pending resolution of Ameriprise's claims against Defendants in a related arbitration that Ameriprise commenced.

## Jurisdiction and Venue

25.    The Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332(a) in that Ameriprise, on the one hand, and Defendants, on the other hand are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and therefore complete diversity exists. Further, Federal Question jurisdiction also exists under 28 U.S.C. § 1331 as Plaintiff's claims include a claim under 18 U.S.C. § 1839(6).

26.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (b)(2) in that Defendants reside in Arizona and a substantial part of the events giving rise to the claims occurred and continue to occur in Scottsdale, Arizona.

## The Parties

27.    Ameriprise is a broker-dealer, registered as such with the United States Securities and Exchange Commission and a member of the Financial Industry Regulatory Authority ("FINRA") and is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.

28.    Defendant Jared Bryce Roskelley (CRD#3139812) was a Registered Representative with Ameriprise. Roskelley's CRD is attached as Exhibit B. Roskelley was at all times relevant to this dispute an Associated Person of FINRA. Roskelley is now

affiliated with Defendant LPL. Roskelley was employed and/or conducted business in Scottsdale, Arizona and is and was a resident of Arizona

29.     Defendant Kyle Lee Robertson (CRD#4547685) was a Registered Representative with Ameriprise. Robertson's CRD is attached as Exhibit C. Robertson was at all times relevant to this dispute, an Associated Person of FINRA. Robertson is now affiliated with Defendant LPL. Robertson was employed and/or conducted business in Scottsdale, Arizona and is and was a resident of Arizona.

30.     Defendant Matthew Joseph Tinyo (CRD#6812817) was a Registered Representative with Ameriprise. Tinyo's CRD is attached as Exhibit D. Tinyo was at all time relevant to this dispute, an Associated Person of FINRA. Tinyo is now affiliated with Defendant LPL. Tinyo was employed and/or conducted business in Scottsdale, Arizona and is and was a resident of Arizona.

31.     Defendant LPL (CRD#6413) is a broker-dealer, registered as such with the United States Securities and Exchange Commission and a Member Firm of the Financial Industry Regulatory Authority ("FINRA") and is a California limited liability company with its principal place of business in San Diego, California. LPL is a necessary party to this action.

32.     In connection with their status as registered representatives of Ameriprise, Roskelley, Tinyo, and Robertson executed Uniform Applications for Securities Industry Registration or Transfers ("Forms U-4"). By executing Forms U-4, Roskelley, Tinyo, and Robertson agreed to submit to arbitration disputes, claims, and controversies arising between themselves and Ameriprise.

**Factual Allegations**

**I.    Roskelley and Robertson's Employment and Contractual Agreements with Ameriprise**

33.     Roskelley joined Ameriprise in October 2023. Roskelley executed multiple agreements during his employment. Relevant to this dispute, the Employment Agreement Roskelley signed in 2023 controls in this matter and is attached as **Exhibit E.**

34. Robertson joined Ameriprise in October 2023. Robertson executed multiple agreements during his employment. Relevant to this dispute, the Employment Agreement that Robertson signed in 2023 controls in this matter and is attached as **Exhibit F.**

35. Tinyo joined Ameriprise in September 2023. Tinyo executed an Employment Agreement at the beginning of his employment. That Employment Agreement controls in this matter and is attached as **Exhibit G.**

36. Over the course of Roskelley, Tinyo, and Robertson's employment, Ameriprise invested heavily in their development and the growth of their business through substantial coaching, support, investment in top technology, and brand recognition amongst the many other benefits Ameriprise provided.

37. At Ameriprise, Roskelley had approximately $324 million in assets under management, maintained roughly $2 million in trailing-12 month revenue, and serviced 194 households. At Ameriprise Robertson had approximately $17 million in assets under management, maintained roughly $127,000 in trailing-12 month revenue, and serviced 40 households.

38. Roskelley, Tinyo, and Robertson have been soliciting clients, sending mass mailings, and performing mass uploads since before January 27, 2025, the day that they submitted their letters of resignation. While Roskelley and Robertson are likely to argue that this was permissive conduct because they intended to invoke the Protocol. This assertion is incorrect as Roskelley and Robertson's invocation of the Protocol was ineffective based on their prior and continuing violations of the same—namely, taking information outside the scope of permissible retention allowed by the Protocol, taking confidential information and soliciting customers prior to their resignations.

39. The Protocol clearly states that registered representatives invoking the Protocol are free to solicit customers that they serviced while at their former firms, **"but only after they have joined their new firms."** *See* the Protocol, attached as **Exhibit A.** The Protocol helpfully states that firms, such as Ameriprise in this case, are "free to enforce whatever contractual, statutory or common law restrictions exist on the

solicitation of customers to move their accounts by a departing [registered representative] before he or she has left the firm. *Id.* That is exactly the case here.

40.    Further, the Employment Agreements contain various restrictive covenants running in favor of Ameriprise, including confidentiality, non-solicitation of clients, and non-solicitation of Ameriprise employees.

41.    The Employment Agreement and Ameriprise policies also provide extensive examples of what constitutes confidential information, including but not limited to: "(a) client files, lists, and holding pages; (b) the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Ameriprise's clients; (c) Ameriprise's client account histories and client risk profiles; (d) computer software or hardware that is leased or licensed by Ameriprise from third parties or developed in-house by Ameriprise; (e) training material made available to Employee during Employee's employment (including but not limited to books, papers, records, videotapes and recordings); (f) documents or computer programs prepared or generated by Employee, if any, in the course of Employee's employment or using Ameriprise's resources including confidential records or information; (g) Ameriprise's business or marketing plans and strategies; (h) other information or materials subject to intellectual property protection that are confidential; (i) Ameriprise employee and franchisee names, addresses or phone numbers . . ." *See* **Exhibit E, F, and G** at Part 4.

42.    Additionally, the Employment Agreement and Ameriprise policies provide that, upon termination of the relationship, Roskelley, Tinyo, and Robertson were required to return (and not retain) all documents and information to Ameriprise. Roskelley, Tinyo, and Robertson agreed that all such records are the property of Ameriprise:

> Employee further agrees that: (a) Employee's use of Protected Information will stop immediately upon the suspension or termination of Employee's employment relationship with Ameriprise; (b) Employee will immediately deliver to Ameriprise at the time of suspension or termination of Employee's employment or at any other time upon Ameriprise's request, any Protected Information in Employee's possession or control; and (c) Employee consents and agrees to immediately permit Ameriprise to inspect, prior to removal, any materials Employee intends to take or has

1    taken from Ameriprise when Employee's employment with Ameriprise is
     suspended or terminated.

2    *See* **Exhibit E, F, and G** at Part 4.

3        43.    The Employment Agreement states that, upon termination of the

4    relationship, Roskelley, Tinyo, and Robertson would conduct themselves as follows:

5        Employee agrees that: (a) during the term of Employee employment with
         Ameriprise; and (b) for the longer of one year after termination of
6        employment or until any and all financial obligations of Employee to
         Ameriprise are satisfied following termination of Employee's employment
7        for any reason, Employee will not, directly or indirectly, recruit or solicit
         any employee or franchisee advisor, or prospective employee or
8        prospective franchisee advisor of Ameriprise. . .

9    *See* **Exhibit E, F, and G** at Part 5.

10       44.    Part 19 of Defendants' Employment Agreements require that the

11   Defendants inform any subsequent employer of their previous employment with

12   Ameriprise and that Defendants provide a copy of the Employment Agreement with any

13   subsequent employer.

14       45.    Roskelley, Tinyo, and Robertson did not return any documents to

15   Ameriprise as required and impermissibly retained records.

16
17       46.    Ameriprise sent Roskelley and Robertson a Reminder of Obligations letter

18   in an attempt to allow Roskelley and Robertson to remedy the situation. *See* **Exhibit H**.

19       47.    Roskelley and Robertson had every opportunity to comply with the

20   Protocol. They chose not to.

21       48.    The Protocol also states that advisors invoking the Protocol may only retain,

22   and under certain circumstances, five categories of information: client name, address,

23   phone number, email address, and account title . . . and are prohibited from taking any

24   other documents or information." *Id.* Given that Roskelley, Tinyo, and Robertson returned

25   no documents or information, are seen carrying out boxes of documents and papers, and

26   there is documented proof that Roskelley, Tinyo, and Robertson conducted large print

27   jobs, and mailed confidential information and documents to clients, they have obviously

28   violated this requirement of the Protocol. Operating under the incorrect assumption that

the Protocol protected them, Roskelley and Robertson rapidly solicited most, if not all, of the clients they formerly serviced while affiliated with Ameriprise.

49.     Because Roskelley and Robertson did not follow the Protocol, they cannot have invoked its protections and are therefore, along with LPL, open to "monetary or other liability." *Id.*

## II.     Roskelley, Tinyo, and Robertson Improperly Retain Confidential Ameriprise Documents and Information and Solicit Ameriprise Clients Forensic Investigation Examination Report

50.     A Forensic Investigation Examination Report ("Report") was prepared by Robert Severson, EnCE ("Severson"), the Manager of Electronic Crime Investigations at Ameriprise. *See* **Exhibit I (Declaration of Severson)**.

51.     Severson received three pieces of evidence; Roskelley's computer, Robertson's computer and Tinyo's computer. Severson conducted the following reviews on all of the computers: Box Activity History, Printer History, Secure Site, Emails for Preceding 30 days, Data Loss Prevention (DLP) Alerts, and general computer history. Other than the email review, which covered only the prior thirty days, all other searches were conducted up to 180 days prior to Roskelley, Tinyo, and Robertson's resignations from Ameriprise.

### Completing Large Print Jobs of Confidential Documents

52.     Ameriprise's print logs show Tinyo and Robertson conducting multiple large print jobs just days prior to their resignation on January 27, 2025 totaling 8,887 pages. Tinyo printed documents pertaining to Roskelley's clients. These print requests required more than seven hours of consecutive printing time to complete.

53.     On January 22, 2025, the Wednesday before their resignations, Tinyo printed 1,157 pages of documents containing confidential client information.

54.     On January 23, 2025, the Thursday before their resignations, Robertson printed 4,384 pages of documents and Tinyo printed 1,138 pages of documents containing confidential client information.

55.    On January 24, 2025, the Friday before their resignations, Robertson printed 1,456 pages of documents and Tinyo printed 752 pages of documents containing confidential client information.

56.    In the nearly 6 months prior to January 22, neither Defendant, nor Tinyo printed a single piece of paper.

57.    This activity was done in order to unfairly compete with Ameriprise and allow Roskelley, Tinyo, and Robertson to gain an unfair competitive advantage. Within a 3-day period Defendants printed a total of 8,887 pages of documents containing confidential information such as client names and account numbers.

**Mass Mailing to Clients and Retention of Confidential Documents and Information**

58.    During this marathon print session, Roskelley, Tinyo, and Robertson began preparing packages to send to several Ameriprise clients that they serviced.  Roskelley, Tinyo, and Robertson used the Ameriprise branch UPS account to send these files using next-day delivery, and the documents were shipped on January 24—their final full day of employment at Ameriprise Financial.  Records indicate that these packages weighed a total of 20 pounds.  The remaining 70 pounds of client documents printed by are, thus far, completely unaccounted for.

59.    Based on the declaration of Branch Manager, Matthew Rea, who reviewed Roskelley, Robertson, and Tinyo's offices after their resignations and was unable to locate 70 pounds of recently printed documents, Ameriprise believes that these documents are either in the immediate possession of the Defendants or were improperly forwarded to clients in violation of Ameriprise's compliance policy and FINRA Rules.

60.    Roskelley and Robertson, along with Tinyo, worked over the weekend to continue their efforts of circumventing their contracts and the Protocol.  The three advisors coordinated to uploaded dozens and dozens of clients documents and statements for the purpose of using these materials after transitioning to LPL.  In total, client statements were published to over 120 different clients on Saturday and Sunday alone, and more documents were shared in the final working days of that preceding week.

61.    Ameriprise Financial policies require that advisors obtain approval before sending out materials or information to clients.  However, neither advisor obtained such permission, and the documents contained in these packages to clients is presently unknown, but based on what was printed, are believed to contain confidential customer information.

62.    Based on (1) the photographic evidence that shows Roskelley, Tinyo, and Robertson carrying out boxes and backpacks of confidential documents and information during the two days prior to their resignation; (2) the evidence that Roskelley, Tinyo, and Robertson printed a total of 8,887 pages of documents containing confidential information such as client information, names, and account numbers; and (3) the evidence that Roskelley, Tinyo, and Robertson uploaded client documents containing confidential information to hundreds of clients, it is clear that Roskelley, Tinyo, and Robertson sent mass communications to a vast majority of their clients with confidential client information prior to their resignation from Ameriprise on January 27, 2025.

63.    By doing this, Roskelley, Tinyo, and Robertson are in clear violation of the Protocol, their agreements with Ameriprise, and the Defend Trade Secrets Act 18 U.S.C. §1839(6) and Section 44-401 of the Arizona Uniform Trade Secrets Act.

64.    Upon their resignations, Roskelley, Tinyo, and Robertson improperly retained, used, and disclosed a significant volume of confidential documents and information belonging to Ameriprise in violation of their various agreements, as stated above. This includes, for example, documents such as account statements, financial plans, proprietary Ameriprise information and modeling, and confidential client information such as account number(s), account balance(s), investment holdings, among other highly confidential documents and information (Collectively, the "Confidential Materials").

65.    Without such Confidential Materials taken prior to their resignation, Roskelley and Robertson would have been unable to commence calling and soliciting Ameriprise clients immediately upon their resignations from Ameriprise or prior to their resignations.

66.    The Confidential Materials are generally not publicly available, not approved for any external distribution, and is intended for internal use only.

67.    Roskelley, Tinyo, and Robertson's retention and use of the Confidential Materials, as well as their disclosure of same to LPL, and their solicitation of Ameriprise clients is ongoing.

68.    In the event Roskelley, Tinyo, and Robertson actually shredded Confidential Materials and documents, they have further violated their agreements with Ameriprise, resulting in Ameriprise not being able to service its own clients because their documents have been impermissibly destroyed. In the event Roskelley, Tinyo, and Robertson did not shred the Confidential Materials and documents, the only conclusion is that they still possess them and are continuing to use them, also resulting in damage to Ameriprise.

69.    Roskelley and Robertson also solicited former Ameriprise employee Matthew Tinyo to terminate his relationship with Ameriprise and join LPL. This is in direct violation of the Protocol and in violation of Roskelley and Robertson's agreements with Ameriprise.

70.    Ameriprise invests substantial time and money, totaling millions of dollars, to acquire, develop, and maintain its clients. It is with great difficulty, and only after a great expenditure of time, money and effort, that Ameriprise acquired its existing clients. Ameriprise spends substantial resources in gaining knowledge about its clients and protecting the privacy of such information. Defendants jeopardized this process. The component of trust is highly important to the relationship between an advisor and their clients. By improperly soliciting these clients, Roskelley and Robertson tarnished the trust and good will Ameriprise expended a great amount of time and money to attain.

71.    Ameriprise employs reasonable efforts to maintain its confidential and proprietary information, including, but not limited to, its client records. Specifically, access to the records is restricted to those employees and/or affiliates whose jobs require them to refer to this information. Ameriprise prohibits duplication of the records, requires

employees and affiliates to use a secure password to access their computer terminals and the firm's intranet, and constantly provides reminders about the confidential nature of the information contained in the records and the need to protect it. Employees and affiliates such as Roskelley, Tinyo, and Robertson are repeatedly made aware, and know, that they must maintain the strictly confidentiality of the client information. These obligations are confirmed in, among other things, the agreements referenced above.

72.    The confidential information that Roskelley, Tinyo, and Robertson retained and provided to LPL was entrusted to Ameriprise by its clients with the expectation that it would remain confidential and would not be disclosed to third-parties or used for any third-parties' benefit.

73.    Ameriprise's privacy policy is of public record, LPL is aware of this and is aware that it only permits the specific information allowed under the Protocol to be taken from its premises.

74.    Furthermore, FINRA Rules, the Gramm-Leach-Bliley Act ("GLBA"), and Regulation S-P mandate the confidentiality of client information. The Protocol permits advisors to take only very limited information to avoid violations of these rules and regulations. Ameriprise must pursue evident breaches of these rules and regulations as failure to do so would erode client confidence in the firm to protect such information. Indeed, by law, Ameriprise must safeguard this information until the controlling authorities authorize its release. Roskelley, Tinyo, and Robertson had access to this information solely by virtue of their affiliations with Ameriprise.

75.    For its part, Ameriprise took numerous steps to protect the confidentiality of this information. Roskelley, Tinyo, and Robertson were fully aware of, and responsible for, complying with Ameriprise's internal policies, which reflect the legal responsibilities of the firm and its advisors regarding confidentiality. Ameriprise implemented numerous other policies and established tight security to ensure the confidentiality of its client information. For example, as is stated above, access to the Ameriprise's computer network

by its professionals is password-protected, and Ameriprise limits its client information to certain individuals who need access to such information to perform their job functions.

76.    Roskelley, Tinyo, and Robertson's misconduct, as described above, constitutes at a minimum, breaches of contract, breaches of fiduciary duty and duty of loyalty, tortious interference, conversion, misappropriation and misuse of trade secrets, and unfair competition. Unless Roskelley, Tinyo, and Robertson's conduct is immediately enjoined, Ameriprise's other employees and affiliates would be encouraged to engage in the same improper conduct. This misconduct is highly disruptive to Ameriprise's ability to conduct business in a stable manner and to maintain Ameriprise's goodwill with its clients and employees and affiliates.

77.    FINRA has sanctioned advisors and firms for the exact same conduct that occurred here as it is clearly a violation of FINRA rules.

78.    FINRA enters Letters of Acceptance, Waiver, and Consent ("AWC") against advisors and firms and implements some level of fine and suspension for the above mentioned conduct. This level of sanction from FINRA is appropriate here given the extreme misappropriation of confidential documents and information by Defendants. FINRA considers these actions violations of the Protocol, of FINRA rules, and of existing contracts between financial firms and advisors.

79.    Letter of Acceptance Waiver, and Consent, No. 2012031496901 (Mar. 31, 2015), sanctioned an advisor for taking customer information prior to resignation and sending that same information to customers following resignation without authorization of their prior firm. *See* **Exhibit J**. This is the exact same conduct Roskelley, Tinyo, and Robertson engaged in prior to their resignation from Ameriprise.

80.    This action coupled with the request for a temporary and preliminary injunction is necessary to remedy the situation and prevent Defendants from conducting future business in this manner and using confidential information and documents at Ameriprise's expense.

81.    It appears that LPL has permitted Roskelley, Tinyo, and Robertson to retain and use their Ameriprise confidential documents and information in violation of their contracts, applicable law, and the Protocol. Upon information and belief, Ameriprise suspects this could be standard practice for LPL, and will seek documents and information in discovery that will address same.

82.    In 2024, Ameriprise discovered similar unlawful activity among other Ameriprise employees and independent contractors who resigned from Ameriprise to join LPL. Ameriprise filed similar Complaints and Motions for Temporary Restraining Order. In both cases, the respective Courts entered Temporary Restraining Orders.

83.    In *Ameriprise Financial Services, LLC v. McCann et al.*, No. 2:24-cv-11471 (E.D. Mich. Jul. 1, 2024) the LPL recruits were accused of preemptively violating the Protocol by printing 687 pages of documents and sending them to customers without compliance oversight, sending emails to themselves containing confidential customer information, and taking boxes of confidential documents out of the Ameriprise office, all prior to the Individual Defendants' resignations. The United States District Court in and for the Eastern District of Michigan entered a Temporary Restraining Order based on the Defendants' actions. *See* **Exhibit K.**

84.    In *Ameriprise Financial Services, LLC v. Kenoyer*, No. 2:24-cv-01675 (W.D. Wash. Oct. 25, 2024) the LPL recruit did not deny that in the months leading up to his resignation, he solicited Ameriprise clients to follow him to another firm. This was similarly a violation of the Protocol and the United States District Court in and for the Western District of Washington entered a Temporary Restraining Order based on Defendants' actions. *See* **Exhibit L.**

85.    There is clearly a pattern and practice among LPL recruiting to encourage its financial advisors to openly violate the Protocol and violate agreements with Ameriprise.

86.    At best, LPL failed and refused to properly instruct Roskelley, Tinyo, and Robertson regarding their obligations pursuant to the Protocol, their contractual

agreements with Ameriprise, and the applicable law, rules, and regulations. At worst, LPL encouraged and participated in these violations, upon information and belief, to improve client transition rates for its own pecuniary benefit. The latter is more likely given LPL and its recruits' actions in the *Kenoyer* and *McCann* cases cited above.

87.    LPL stands to benefit significantly from Roskelley, Tinyo, and Robertson conduct in the form of, *inter alia*, increased client assets and revenue generation.

88.    Defendants have clearly misappropriated Ameriprise confidential information. The only avenue Ameriprise has to ensure immediate return is through the Court's power of injunctive relief. Similarly, Ameriprise must immediately investigate other clients affected by this misappropriation and the only way to do so is through expedited discovery. Ameriprise must investigate the mailings and determine the number of clients affected by this misconduct. Based on the information gathered, it is clear that Roskelley, Tinyo, and Robertson sent documents to a vast majority of their clients. Ameriprise must determine the exact number of clients in order to retrieve Ameriprise's confidential information.

89.    Defendants' misconduct creates privacy issues and is highly disruptive to Ameriprise's ability conduct business in a stable manner and to maintain Ameriprise's goodwill with its clients. Unless Defendants' misconduct is immediately restrained and enjoined, other competitors of Ameriprise will be encouraged to engage in the same kind of improper behavior with complete impunity, the result of which will inflict sever and permanent damages on Ameriprise.

90.    By improperly soliciting Ameriprise's clients, Defendants have caused and will continue to cause continuing and irreparable injury to Ameriprise which cannot be cured by monetary damages. Defendants' wrongdoing have caused and will continue to inflict irreparable harm to Ameriprise by causing:

   a.    Loss of Ameriprise clients and loss of client confidence;

   b.    Injury to Ameriprise's reputation and goodwill in Arizona;

c.      Use and disclosure of Ameriprise's confidential and proprietary information, including client lists;

d.      Damage to office morale and stability, and the undermining of office protocols and procedures; and

e.      Present economic loss, which is unascertainable at this time, and future economic loss, which is now incalculable.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Roskelley, Tinyo, and Robertson)

91.     Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

92.     Roskelley, Tinyo, and Robertson retained, used, and are presently using Ameriprise's confidential documents and information, and has disclosed such documents and information to LPL.

93.     Roskelley and Robertson are soliciting Ameriprise clients.

94.     Roskelley, Tinyo, and Robertson breached, and continue to breach, their contractual duties under the Employee Agreements with Ameriprise, including their duties not to solicit Ameriprise's clients and/or employees or affiliates both before and after resignation, and not to take, retain, and/or use confidential and proprietary information from Ameriprise.

95.     Ameriprise performed all of its duties under the Employee Agreements.

96.     As a proximate result of Roskelley, Tinyo, and Robertson's breaches, Ameriprise sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief and further damages to be determined at final hearing.

## SECOND CAUSE OF ACTION

### (Conversion Against All Defendants)

97.     Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

98.    At all times Ameriprise was, and still is, entitled to the immediate and exclusive possession of its confidential and proprietary information and all physical embodiments thereof.

99.    Upon their departures from Ameriprise, Roskelley, Tinyo, and Robertson took Ameriprise's confidential and proprietary information, including, but not limited to, confidential client contact and financial information, account workbooks, and account statements, without Ameriprise's permission or consent, and converted such information for their use and the use of their new firm, LPL, and/or those acting in concert with them.

100.    LPL refuses to return Ameriprise's confidential and proprietary information.

101.    Roskelley, Tinyo, and Robertson refuse to return Ameriprise's confidential and proprietary information.

102.    LPL's retention and use of Ameriprise's confidential and proprietary information without Ameriprise's permission and consent constitutes conversion.

103.    As a direct and proximate result of Respondents' conversion, Ameriprise sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief and damages to be determined at final hearing.

## THIRD CAUSE OF ACTION

### (Misappropriation of Trade Secrets Against All Defendants)

104.    Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

105.    Ameriprise's confidential and proprietary client information, including the information contained on the Protocol Lists, constitutes a "trade secret" within the definition under 18 U.S.C. §1839(3) and Section 44-401 of the Arizona Uniform Trade Secrets Act.

106.    By breaching their duties of confidentiality and to otherwise maintain the secrecy of Ameriprise's trade secrets, Roskelley, Tinyo, and Robertson acquired

Ameriprise's trade secrets by "improper means," as defined in the Defend Trade Secrets Act 18 U.S.C. §1839(6) and Section 44-401 2.(a) of the Arizona Uniform Trade Secrets Act.

107.    LPL induced Roskelley, Tinyo, and Robertson to breach their obligations to maintain secrecy of the trade secrets and acquired the trade secrets from Roskelley, Tinyo, and Robertson, despite knowledge that Roskelley, Tinyo, and Robertson had employed "improper means" to obtain same.

108.    Roskelley, Tinyo, and Robertson disclosed or used Ameriprise's trade secrets without Ameriprise's express or implied consent.

109.    Roskelley, Tinyo, and Robertson's misappropriation was willful and malicious.

110.    Ameriprise is entitled to injunctive relief pursuant to 18 U.S.C. §1836(b)(3)(A) and Section 44-402 of the Arizona Uniform Trade Secrets Act.

111.    In addition, Ameriprise is entitled to an award of damages for the actual loss caused by misappropriation pursuant to 18 U.S.C. §1836(b)(3)(B)(i)(I) and Section 44-403 of the Arizona Uniform Trade Secrets Act, exemplary damages pursuant to 18 U.S.C. §1836(b)(3)(C), and attorney's fees pursuant to 18 U.S.C. §1836(b)(3)(D) and Section 44-403 of the Arizona Uniform Trade Secrets Act.

## FOURTH CAUSE OF ACTION

### (Tortious Interference Against Roskelley, Tinyo, and Roberton)

112.    Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

113.    Ameriprise develops and maintains advantageous actual and prospective business relationships and business expectancies with respect to its clients, which promise a continuing probability of future economic benefit to Ameriprise.

114.    Roskelley, Tinyo, and Robertson knew or reasonably should have known about Ameriprise's advantageous actual and prospective business relationships and business expectancies with respect to its clients.

115.    Roskelley, Tinyo, and Robertson intentionally or negligently interfered with, and continue to interfere with, Ameriprise's business relationships and business expectancies with respect to its clients by, among other things, directly and/or indirectly attempting to induce Ameriprise's clients to sever their relationships with Ameriprise and instead join LPL.

116.    There is no privilege or justification for Roskelley, Tinyo, and Robertson's misconduct. On the contrary, Roskelley, Tinyo, and Robertson are interfering with Ameriprise's business relationships and expectancies by improper means and in violation of their contractual obligations of confidentiality and non-solicitation, in breach of their fiduciary duties of loyalty, and in reliance on the trade secrets that Roskelley, Tinyo, and Robertson misappropriated from Ameriprise.

117.    Roskelley, Tinyo, and Robertson's conduct were and continues to be improper, willful, and malicious.

118.    As a direct and proximate result of Roskelley, Tinyo, and Robertson's tortious interference with Ameriprise's actual and prospective business relationships and expectancies, Ameriprise has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief and damages to be determined at final hearing.

## FIFTH CAUSE OF ACTION

### (Tortious Interference Against LPL)

119.    Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

120.    Ameriprise develops and maintains advantageous actual and prospective business relationships and business expectancies with respect to its employees and affiliates, which promise a continuing probability of future economic benefit to Ameriprise.

121.   The business relationships Ameriprise develops and maintains with its employees and affiliates necessitate restrictive covenants including non-solicitation and confidentiality obligations, such as those included in the Employee Agreements.

122.   LPL knew or reasonably should have known about Ameriprise's advantageous actual and prospective business relationships and business expectancies with respect to its employees and affiliates, including Roskelley, Tinyo, and Robertson.

123.   LPL intentionally or negligently interfered with, and continues to interfere with, Ameriprise's business relationships and business expectancies with respect to its employees and affiliates by, among other things, directly and/or indirectly inducing Ameriprise's employees and affiliates, including Roskelley, Tinyo, and Robertson, to sever their relationships with Ameriprise and breach their contractual obligations to Ameriprise.

124.   There is no privilege or justification for LPL's conduct. On the contrary, LPL is interfering with Ameriprise's business relationships and expectancies by improper means and inducing Roskelley, Tinyo, and Robertson to violate their contractual and legal obligations to Ameriprise.

125.   As a direct and proximate result of LPL's tortious interference with Ameriprise's actual and prospective business relationships and expectancies, Ameriprise has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief and damages to be determined at final hearing.

## SIXTH CAUSE OF ACTION

### (Unfair Competition Against All Defendants)

126.   Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

127.   Respondents' conduct as set forth above and incorporated herein is unlawful, unfair and deceptive, and it constitutes unfair competition.

////

128.    Respondents were fully aware, or should have been aware, that the misconduct they engaged in would cause Ameriprise to lose clients that it expended great deals of time, effort and money to develop, and who Respondents would not had an opportunity to advise had Roskelley, Tinyo, and Robertson not been affiliated with Ameriprise.

129.    As a direct and proximate result of Respondents' unfair competition, Ameriprise sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief restraining Respondents from engaging in further wrongful conduct and restoring the status quo ante as well as further damages to be decided at final hearing.

### SEVENTH CAUSE OF ACTION

### (Unjust Enrichment Against All Defendants)

130.    Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

131.    Roskelley, Tinyo, and Robertson have been unjustly enriched by their access to, use of, and disclosure of Ameriprise's confidential information.

132.    Roskelley, Tinyo, and Robertson have been unjustly enriched by their solicitations of previous or current Ameriprise clients and prospects.

133.    Roskelley, Tinyo, and Robertson received compensation for every Ameriprise client they solicited or pre-solicited to join LPL.

134.    LPL condones, encourages, and compensates Roskelley, Tinyo, and Robertson for their wrongful conduct as LPL, too, receives substantial profit from and is unjustly enriched by each Ameriprise client improperly solicited to join LPL.

135.    Roskelley, Tinyo, and Robertson's solicitations were at, and continues to be at, Ameriprise's expense as Ameriprise is continually damaged by Roskelley, Tinyo, and Robertson's and LPL's actions.

136.    It is highly inequitable for Ameriprise to have its reputation ruined, lose assets, and have valuable assets solicited away and for Roskelley, Tinyo, and Robertson and LPL to profit from their wrongful conduct.

## EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duties, Including Duty of Loyalty Against Roskelley, Tinyo, and Robertson)

137.    Ameriprise realleges and incorporates herein by reference the allegations contained in Paragraphs 1-86.

138.    Roskelley, Tinyo, and Robertson violated their duties of loyalty to Ameriprise by pre-announcing their future transition to clients and pre-soliciting clients.

139.    Roskelley, Tinyo, and Robertson violated their duties of loyalty to Ameriprise by soliciting each other to leave Ameriprise and join a competitor while all still affiliated with Ameriprise.

140.    Roskelley, Tinyo, and Robertson further violated their duties of loyalty to Ameriprise by soliciting Matthew Tinyo to leave Ameriprise and join a competitor while all still affiliated with Ameriprise.

141.    As a proximate result of Roskelley, Tinyo, and Robertson's breaches, Ameriprise sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated and for which there is no adequate remedy at law. Accordingly, Ameriprise is entitled to injunctive relief and further damages to be determined at final hearing.

**WHEREFORE**, Ameriprise respectfully requests that a judgement be entered in its favor against Defendants as follows:

A.    In support of all claims for relief, a temporary and preliminary injunction lasting until such time as duly appointed panel of arbitrators at FINRA renders an award in the underlying dispute, enjoining and restraining Defendants, directly or indirectly, and whether alone or in concert with others, including but not limited to the directors, officers, employees, and/or agents of LPL from:

i.    Soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any Ameriprise client services by Defendants at Ameriprise or whose names became known to Defendants by virtue of their employment with Ameriprise (or any of its predecessors in interest); and

ii.    Using, disclosing, or transmitting for any purpose Ameriprise's documents, materials, and/or confidential and proprietary information pertaining to Ameriprise, Ameriprise's employees, and/or Ameriprise's clients.

B.    Ordering Defendants, and all those acting in concert with them, to return to Ameriprise or its counsel all records, documents, and/or information in whatever form (whether original, copied, computerized, electronically stored, or handwritten) pertaining to Ameriprise's customers, employees, and business within 24 hours of notice to Defendants or their counsel of the terms of such an order.

C.    Expedited discovery.

D.    Such other and further relief as the Court deems just and proper.

DATED this 11th day of February, 2025.

JENNINGS HAUG KELEHER MCLEOD
 & WATERFALL, LLP

s/ *Joseph A. Brophy*
Joseph A. Brophy

SHUMAKER LOOP & KENDRICK, LLP

s/ *Jarrod J. Malone*
Jarrod J. Malone

Attorneys for Plaintiff

---

[i] The Financial Industry Regulatory Authority ("FINRA") was created in July 2007 through the consolidation of the National Association of Securities Dealers, Inc. and the member regulation enforcement and arbitration functions of the New York Stock Exchange. Pursuant to Rule 13200 of the FINRA Code of Arbitration Procedure for Industry Disputes, the parties to this action are required to arbitrate disputes that they have with each other before a panel of arbitrators appointed by FINRA, but Ameriprise has the express right to seek temporary injunctive relief before a court of competent jurisdiction pending the arbitration pursuant to Rule 13804.